# EXHIBIT 3



July 10, 2025

*Sent via Online FOIA Request & Response Service*

U.S. Citizenship and Immigration Services (USCIS)
National Records Center (NRC)
FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010

**Re:    EXPEDITED Freedom of Information Act Request – USCIS's Implementation of Purported Authority to Place Noncitizens into Expedited Removal**

Dear FOIA Officer:

This letter constitutes a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, submitted on behalf of Asylum Seeker Advocacy Project ("ASAP" or "Requestor"). ASAP asks that U.S. Citizenship and Immigration Services ("USCIS" or the "Agency") expedite processing of this request, proactively disclose the requested documents, and waive any fees.

**I.    Request for Information**

ASAP requests that USCIS produce the following records:

1. All electronic communications (including email messages, complete email chains, email attachments, and Microsoft Teams Messages) sent by any of the officials listed below from January 20, 2025 through the date of the search containing any of the following terms:

    a. Officials:
        i. Kristi Noem
        ii. Angelica Alfonso-Royals
        iii. Andrew Davidson
        iv. Kika Scott
        v. Jennifer Higgins
        vi. Ted H. Kim
        vii. Joseph E. Kernan
        viii. The officials occupying the following USCIS positions from January 20, 2025 through the date of the search, including officials performing the duties of the position in an acting capacity:
            1. Deputy Director

228 Park Ave. S. #84810, New York, New York 10003-1502
info@asylumadvocacy.org | asylumadvocacy.org

      2. Deputy Associate Director, Refugee, Asylum, and International Operations Directorate (RAIO)
      3. Associate Director, Fraud
      4. Detection and National Security Directorate (FDNS)
      5. Deputy Associate Director, FDNS
      6. Director, Asylum Division
      7. Deputy Director, Asylum Division
      8. Chief, Quality Assurance Branch, Asylum Division
      9. Chief, Training Branch, Asylum Division
      10. Chief, Operations Branch, Asylum Division
      11. Chief, Management Branch, Asylum Division
      12. Chief, IDEA Branch, Asylum Division
      13. Chief, FDNS, Asylum Division
      14. Chief, FDNS, RAIO Directorate
      15. Chief, Office of Policy and Strategy (OP&S)
      16. Deputy Chief, OP&S
      17. Chief, Humanitarian Affairs Division, OP&S
      18. Chief, International and Humanitarian Affairs Branch, Humanitarian Affairs Division, OP&S
      19. Chief, Security and Public Safety Division, OP&S

    a. Terms:
      i. (I-589 OR asylum) AND (dismiss* OR transfer* OR terminate* OR "expedited removal")
      ii. (I-589 OR asylum) AND "jurisdiction* list"

2. Memoranda, guidance, or other records from Department of Homeland Security ("DHS") Secretary Kristi Noem and/or any DHS official purporting to delegate authority to USCIS to place noncitizens into Expedited Removal dated from January 20, 2025 through the date of the search.[1]

3. Memoranda, guidance, lists, Agency policies, or other records regarding or reflecting USCIS's prioritization of certain categories or groups of affirmative asylum seekers for termination of their I-589 applications to pursue Expedited Removal dated from January 20, 2025 through the date of the search.

4. Memoranda, guidance, Agency policies, or other records related to Expedited Removal, dated from January 20, 2021 through the date of the search, that:
    a. Discuss the existence and scope of USCIS's purported authority to place noncitizens into Expedited Removal;
    b. Direct or authorize USCIS to terminate or dismiss affirmative asylum applications for the purpose of pursuing Expedited Removal;

---

[1] *See* Priscilla Alvarez, *Exclusive: New Trump administration plan could end asylum claims and speed deportations for hundreds of thousands of migrants*, CNN (June 25, 2025), https://www.cnn.com/2025/06/25/politics/migrants-asylum-claims-deportations (stating that USCIS has been "delegated the authority by Homeland Security Secretary Kristi Noem to place" people into expedited removal), attached as **Exhibit A**.

    c. Reflect the circumstances under which, and how, USCIS will take administrative action in the case of an individual with a pending I-589 application to pursue Expedited Removal of that individual;
    d. Discuss how USCIS confirms that an affirmative asylum applicant has in fact been issued a Form I-860; and/or
    e. Discuss how USCIS identifies or tags affirmative asylum cases as "Credible Fear" or "CF" and what Agency procedures are triggered when a case is so identified or tagged, including memoranda, guidance, lists, or Agency policies regarding the circumstances and purported authority under which USCIS personnel may "convert" consideration of an affirmative asylum application into a credible fear interview.

5. Memoranda, guidance, lists, Agency policies, or other records related to USCIS's "jurisdiction" over I-589 applications dated from January 20, 2021 through the date of the search, that:
    a. Discuss how USCIS conducts "jurisdictional review";
    b. Discuss how USCIS determines it does or does not have "jurisdiction" over I-589 applications;
    c. Discuss, direct, or authorize dismissing, terminating, or transferring certain affirmative asylum applications based on USCIS's determination that it lacks jurisdiction over the application;
    d. Reflect USCIS's identification or prioritization of cases over which it does or does not have "jurisdiction" over I-589 applications; and/or
    e. Reflect the circumstances under which, and how, USCIS will issue a form "Appendix 108" to an individual with a pending I-589 application.

6. Training materials related to items 2-5 above, including any recordings and transcripts of trainings and instructor notes.

## II.    Request to Expedite Processing

Requestor ASAP asks that USCIS expedite the processing of this FOIA request. Expedited processing is warranted because (1) the FOIA request involves the "loss of substantial due process rights," 5 U.S.C. § 552(a)(6)(E)(v)(I), (II); 6 C.F.R. § 5.5(e)(1); (2) the lack of expedited processing could pose an imminent threat to the life or physical safety of asylum seekers who may have their affirmative asylum cases terminated and be placed into Expedited Removal pursuant to USCIS's purported authority to place people into Expedited Removal; and (3) there is "an urgency to inform the public about an actual or alleged federal government activity" for ASAP, an organization that is "primarily engaged in disseminating information."

**First**, this FOIA request implicates the "loss of substantial due process rights." *See* 6 C.F.R. § 5.5(e)(1)(iii). Federal law requires any systemic challenge to Expedited Removal "**be filed no later than 60 days** after the date the challenged section, regulation, directive, guideline, or procedure" . . . "is first implemented." 8 U.S.C. § 1252(e)(3)(B) (emphasis added). Because there is a 60-day statutory time limit to challenge the lawfulness of Expedited Removal policies, due process requires that the Agency expeditiously disclose the documents setting forth the policies;

3

withholding them would deprive affected parties of a meaningful opportunity to seek timely judicial review.

Further, noncitizens "are entitled to due process and must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner." *L.M. v. Johnson*, 150 F. Supp. 3d 202, 208 (E.D.N.Y. 2015) (internal quotation marks omitted). USCIS's decision to dismiss unilaterally affirmative asylum applications and implement its purported Expedited Removal authority implicates noncitizens'—and specifically, asylum seekers'—right to due process, as they could have their applications dismissed and be placed into Expedited Removal without appropriate authority and without an opportunity to be heard or present their claims. *See, e.g.*, *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1162 (9th Cir. 2005) ("Immigration proceedings . . . must conform to the Fifth Amendment's requirement of due process").

**Second**, USCIS's implementation of its purported authority to place people into Expedited Removal leaves asylum seekers imminently vulnerable to removal to countries where their physical safety or lives are in danger.[2] *See* 6 C.F.R. § 5.5(e)(1)(i). Asylum seekers who submit Form I-589 applications likely fled oppressive regimes, death threats, and persecution in their home countries. According to news reports, USCIS is now terminating certain affirmative asylum applications and exercising purported authority to place noncitizens into Expedited Removal.[3] However, asylum seekers have no understanding of how USCIS is implementing this purported authority; whether and why their affirmative asylum cases will be terminated; whether they will be placed into Expedited Removal; or whether they will have an adequate opportunity to challenge their removal to countries where their physical safety or lives are in danger. ASAP, and the public, must immediately review records related to USCIS's plan to terminate affirmative asylum applications and implementation of its purported Expedited Removal authority to understand which noncitizens will be affected; the legality and scope of the delegation; and whether impacted asylum seekers could challenge the delegation, implementation, termination of their asylum application, or their placement into Expedited Removal. This request qualifies for expedited processing on this basis alone.

**Third,** and independently, expedited processing is warranted because this request involves "an urgency to inform the public about an actual or alleged federal government activity" for ASAP, an organization that is "primarily engaged in disseminating information[.]" 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1).

<u>It is urgent to inform the public about this federal government activity</u>. USCIS's termination of affirmative asylum application and implementation of its purported authority to place people, including asylum seekers, into Expedited Removal constitutes an "actual or alleged federal government activity," and it is urgent that the public be informed about how this authority will be implemented in practice. *See* 6 C.F.R. § 5.5(e)(1)(ii). Upon information and belief, USCIS has

---

[2] *See, e.g.*, Ex. A; Laura Romero, Armando Garcia, and Mireya Villarreal, *In a new tactic, ICE is arresting migrants at immigration courts, attorneys say*, ABC News, June 4, 2025, https://abcnews.go.com/US/new-tactic-ice-arresting-migrants-immigration-courts-attorneys/story?id=122513021 (explaining that the Trump administration is using dismissals of an asylum case to detain people and place them into expedited removal without allowing them to fight their asylum case).

[3] *See* Ex. A.

4

already dismissed or imminently will dismiss a large number of individual asylum applications for the purpose of placing those asylum seekers into Expedited Removal. However, without records related to USCIS's practice of terminating affirmative asylum applications and use of Expedited Removal, impacted people and the public have no understanding of the federal government's new policy, the details surrounding it, or how to challenge or request review of the Expedited Removal placement in a particular person's case or on a systemic basis.

The federal government's decision to terminate asylum applications in order to expeditiously remove certain asylum seekers has garnered widespread public interest.[4] Most reports have focused on the Executive Office for Immigration Review's ("EOIR") practice, so it is critical for the public to have a better understanding of what appears to be the USCIS corollary of the same policy. *See Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) (concluding that "widespread media attention—including by some of the nation's most prominent news outlets" is "strong evidence of an 'urgency to inform' the public"); *see also* 6 C.F.R. § 5.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful to establishing the requirement that there be an 'urgency to inform' the public on the topic"). Additionally, ASAP's members have collectively identified making the asylum system more accessible and transparent as urgent priorities.[5] It is urgent that records related to USCIS's practice of dismissing affirmative asylum applications and implementation of its purported Expedited Removal authority be made public.

ASAP is an organization primarily engaged in disseminating information. Further, Requestor is an organization "primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(v); 6 C.F.R. § 5.5(e)(1)(ii), because "information dissemination [is its] main activity," *Protect Democracy Project*, 263 F. Supp. 3d at 298 (internal quotation marks and citation omitted). ASAP is a national nonprofit organization that seeks to build a more welcoming United States for individuals fleeing persecution by, among other things, frequently communicating about changes in the immigration system with its members across the United States from more than 175 countries about federal immigration policy. ASAP has the capacity and intent to disseminate widely the requested information to its members, the media, and the public more broadly. ASAP shares news and information about immigration law and the asylum process with members via detailed resources and breaking news alerts on our website, https://asaptogether.org/, as well as through regular member-wide updates via email and text messages, and YouTube informational videos, which are collectively accessed millions of times.

Additionally, Requestor collaborates frequently with national print and news media to highlight

---

[4] *See supra* n.2; Ximena Bustillo, *ICE's novel strategy allows for more arrests from inside immigration courts*, NPR, June 12, 2025, https://www.npr.org/2025/06/12/nx-s1-5409403/trump-immigration-courts-arrests; Rebecca Beitsch, *ICE moves to dismiss cases in bid to fast-track deportations after courthouse arrests*, The Hill, June 8, 2025, https://thehill.com/regulation/court-battles/5337722-ice-arrests-migrants-after-dismissal; Melissa Gomez and Rachel Uranga, *Father ripped from family as agents target immigration courts, arresting people after cases dismissed*, Los Angeles Times, May 24, 2025, https://www.latimes.com/california/story/2025-05-24/ice-agents-swarm-immigration-courts-arresting-people-after-cases-dismissed.

[5] *See* ASAP, *5 Ways to Change the Asylum Process*, available at: https://asaptogether.org/en/5-ways-to-change-the-asylum-process/ (last updated July 9, 2025).

5

issues impacting asylum seekers, including breaking news on this very issue.[6] Requestor's staff will review, analyze, share, and disseminate the information obtained through this FOIA request to interested members, media outlets, and the public.[7] The above representations by organizations like ASAP establish that a requestor is "primarily engaged in disseminating information" to qualify for expedited processing. *See, e.g.*, *Protect Democracy Project*, 263 F. Supp. 3d at 298 (non-profit organization "primarily engaged in disseminating information" for purposes of its expedited processing claim where it intended "to disseminate the information obtained" and its "core mission . . . [was] to inform public understanding on operations and activities of government"); *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 98 (D.D.C. 2020) ("law and public policy group that regularly writes, publishes, and disseminates information [online]" satisfied the standard (alterations omitted)).

In sum, for the three independent bases discussed above, this request warrants expedited processing.

ASAP certifies that the above information is true and correct to the best of its knowledge. *See* 6 C.F.R. § 5.5(e)(3).

### III. Proactive Disclosure

The Requestor also seeks proactive disclosure of the requested records pursuant to 5 U.S.C. § 552(a)(2). USCIS's decision to dismiss affirmative asylum applications and implement its purported authority to place noncitizens into Expedited Removal is a "statement[] of policy" subject to proactive disclosure under FOIA. *Id.* § 552(a)(2)(B). The need for proactive disclosure is especially urgent here, where there is a 60-day statutory time limit to bring systemic challenges to Expedited Removal policies. *See supra* Part II (demonstrating first basis for expedited processing); 8 U.S.C. § 1252(e)(3)(B) (60-day time limit). Further, to the extent that any of the requested Agency records include (1) administrative staff manuals and instructions to staff that affect a member of the public, or (2) records that have been released to any person or have been requested at least three times, the records are independently subject to proactive public disclosure and must be produced. *See* 5 U.S.C. §§ 552(a)(2)(C)–(D).

---

[6] Indeed, ASAP's work and its members have repeatedly been featured in prominent media outlets including CNN, The Washington Post, The New York Times, The Wall Street Journal, USA Today, CBS News, The Atlantic, Telemundo, Univision, The Hill, Associated Press, ABC News, and The Guardian, among others. *See, e.g.*, Ex. A (quoting ASAP's co-executive director); Astrid Galván, Monica Eng, Steph Solis, *False rumors of ICE raids spark panic in cities around U.S.*, Axios, Jan. 30, 2025, https://www.axios.com/2025/01/30/immigration-raids-misinformation-trump (quoting ASAP's co-executive director); Rafael Bernal, *Mayors ask DHS to extend migrant work permits*, The Hill, Feb. 12, 2024, https://thehill.com/latino/4463771-mayors-dhs-migrant-work-permits/ (quoting an ASAP member); Julia Preston, *'No words for the anxiety': migrants desperate for jobs trapped in US asylum maze*, The Guardian, Sept. 10, 2023, https://www.theguardian.com/us-news/2023/sep/10/us-immigration-work-permits-asylum-maze; Michelle Hackman, *Immigrants to Get Extension for Expiring or Expired U.S. Work Permits*, The Wall St. J., May 3, 2022, https://www.wsj.com/articles/immigrants-to-get-extension-for-expiring-or-expired-u-s-work-permits-11651579201.

[7] Earlier this year, ASAP filed a FOIA request for a USCIS memorandum pausing adjudication of benefits applications for hundreds of thousands of parolees, USCIS agreed to expeditiously process the request and produced the memorandum, and Requestor disseminated the memo and information about the USCIS action to its members.

### IV. Request for Waiver of Costs

The Requestor asks that USCIS waive all fees associated with this FOIA request. ASAP is entitled to a fee waiver because disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k) (records may be furnished without charge or at a reduced rate if the information is in the public interest, and disclosure is not in the commercial interest of the requestor).

#### a. Disclosure of the Information is in the Public Interest

Disclosure of the requested records will contribute significantly to the public's understanding of the Agency's practice of dismissing affirmative asylum applications and purported authority to place noncitizens into Expedited Removal. In determining whether a disclosure of information is in the public interest, the Agency considers whether: (i) the subject of the request concerns "operations or activities of the federal government"; (ii) the disclosure is likely to contribute to an increased public understanding of government operations or activities; (iii) the disclosure of the requested information will contribute to the understanding of a "reasonably broad audience of persons interested in the subject"; and (iv) disclosure is likely to contribute a "significant extent" to the public's understanding of the subject in question. 6 C.F.R. §§ 5.11(k)(2)(i)-(iv). Each of these factors is satisfied here.

**First**, the requested agency records pertain directly to "operations or activities of the Federal Government," 6 C.F.R. § 5.11(k)(2)(i), namely details surrounding USCIS's practice of dismissing affirmative asylum applications and implementation of its purported authority to place noncitizens into Expedited Removal.

**Second**, disclosure of the requested agency records will contribute to an increased public understanding of how USCIS is implementing its purported authority to place noncitizens into Expedited Removal, which it has never done before, and its practice of dismissing affirmative asylum applications. *Id.* § 5.11(k)(2)(ii). To Requestor's knowledge, no Agency documents surrounding these practices are public, thus disclosure of the requested records will contribute to the public's understanding of this government activity.

**Third**, disclosure of the requested information will contribute to the understanding of a reasonably broad audience of persons interested in the subject. As discussed above, the federal government's decision to dismiss affirmative asylum applications and place asylum seekers into Expedited Removal in order to deport them more quickly and easily is already a matter of widespread public interest.[8] Thus, the public should have a better understanding of USCIS's dismissal practice and implementation of its purported authority and decision to place noncitizens, including asylum seekers, into Expedited Removal. Additionally, ASAP has the capacity and intent to disseminate widely the requested records directly and through its media contacts. *See* 6 C.F.R. § 5.11(k)(2)(iii) (noting that a requestor's expertise in the subject area as well as his or her ability and intention to effectively convey information to the public shall be considered when evaluating this factor).

---

[8] *See supra* n.4.

**Fourth**, disclosure of information obtained through this FOIA will likely contribute significantly to the public's understanding of USCIS's practice of dismissing affirmative asylum applications and implementation of its purported authority and decision to initiate Expedited Removal for countless asylum seekers. To ASAP's knowledge, no Agency records related to these practices are publicly available, thus disclosure of the requested records will help shed light on USCIS's power and decision to dismiss affirmative asylum applications and place affirmative asylum seekers into Expedited Removal and give the public a better understanding of the same.

### b. Disclosure of the Information Is Not in the Requestor's Commercial Interest

Requestor is a 501(c)(3) nonprofit membership organization. Requestor seeks the requested information for the purpose of educating our members and the public—not for the purpose of commercial gain. Requestor will use the records obtained to inform our organizational materials and guidance, as ASAP provides free resources to asylum seekers across the United States. As such, a waiver of fees is especially warranted given that "Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." *Jud. Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

If the full fee waiver is not granted, however, ASAP requests a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II). Further, if no fee waiver is granted and the anticipated costs associated with this request exceed $25.00, please notify Requestor to obtain consent and provide an estimate of the additional fees before processing this request.

### V.    Conclusion

Thank you for your consideration of this request. Without waiving any other appeal rights, Requestor reserves the right to appeal a constructive denial of this request as well as decisions to withhold information or deny a fee waiver, limitation of processing fees, or expedited processing. Requestor also reserves the right to challenge the adequacy of the search for responsive documents, as well as any redactions in the records produced in response to this request.

If you have any questions regarding this request, please contact us at the email address listed in the signature block below.

Sincerely,

*Jessica Hanson*
Zachary Manfredi
Jessica Hanson
Marcela Johnson
Juan Bedoya
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 647-6779 | foia@asylumadvocacy.org

# Exhibit A

# Exclusive: New Trump administration plan could end asylum claims and speed deportations for hundreds of thousands of migrants

By Priscilla Alvarez, CNN

5 minute read · Updated 12:50 PM EDT, Wed June 25, 2025



President Donald Trump speaks to reporters before boarding the Marine One presidential helicopter and departing the White House on June 24, 2025 in Washington, DC. Chip Somodevilla/Getty Images

**(CNN)** — The Trump administration is planning to dismiss asylum claims for potentially hundreds of thousands of migrants in the United States and then make them immediately deportable as part of the president's sweeping immigration crackdown, according to two sources familiar with the matter.

It marks the latest in a series of moves by the administration to bar migrants from receiving protections in the US. As federal authorities come under pressure to deliver historic

protections in the US. As cases are authorized come under pressure to deliver results on immigration arrest numbers, administration officials have quietly been working on efforts to make more people eligible for removal.

The people being targeted in this case are those who entered the US unlawfully and later applied for asylum, the sources said. Their cases are expected to be closed, therefore leaving them at risk of deportation. It could affect hundreds of thousands of asylum applicants.



**RELATED ARTICLE**
Less than 10% of immigrants taken into ICE custody since October had serious criminal convictions, internal data shows

Over the last decade, the majority of applicants who applied for asylum with US Citizenship and Immigration Services, or USCIS, self-reported how they entered the US, with around 25 percent saying they entered the US unlawfully. That amounts to at least a quarter of a million people, according to a federal report analyzing asylees in 2023. The others entered legally via a port of entry through various visas.

Under US law, people who are seeking protection from violence or persecution in their home country can claim asylum to remain in the United States. Trump effectively sealed off access to claiming asylum at the US southern border upon taking office.

There are currently around 1.45 million people with pending affirmative asylum applications, federal data shows. People who are not in deportation proceedings can apply for affirmative asylum through USCIS.

USCIS — which falls under the Department of Homeland Security and is responsible for managing federal immigration benefits — has also been delegated the authority by Homeland Security Secretary Kristi Noem to place those individuals in fast-track deportation proceedings as well as "take additional actions to enforce civil and criminal violations of the immigration laws," according to a memo obtained by CNN. That marks an unprecedented departure from decades-long protocol for USCIS.

In a statement to CNN, USCIS spokesperson Matthew Tragesser said the agency had "nothing to announce at this time."

"USCIS' top priority remains the screening and vetting of all aliens seeking to come, live, or work in the United States. President Trump and Secretary Noem have given USCIS the ability to use all tools in our toolbox to ensure that the integrity of the immigration system is upheld,

fraud is uncovered and expeditiously addressed, and illegal aliens are removed from the country," he added.

Typically, USCIS can turn people over to Immigration and Customs Enforcement for the next stages of their immigration process if they determine they're not eligible for relief in the United States. Enforcement actions, like ordering someone to be quickly removed, have generally fallen under the authority of ICE and US Customs and Border Protection.

Experts and advocates warn that placing USCIS at the center of the president's deportation campaign is likely to have a chilling effect for those trying to obtain relief and remain in the United States.

"They're turning the agency that we think of as providing immigration benefits as an enforcement arm for ICE" said Sarah Mehta, deputy director of government affairs for the American Civil Liberties Union's equality division.

Migrants who have their cases dismissed under the administration's new plan will be subject to expedited removal. That fast-track deportation procedure allows immigration authorities to remove an individual without a hearing before an immigration judge.



**RELATED ARTICLE**
Exclusive: Trump administration tells migrants from Cuba, Haiti, Nicaragua and Venezuela their legal status is terminated

Trump officials expanded fast-track deportations earlier this year to include undocumented immigrants anywhere in the US who cannot prove they've lived in the US continuously for two years or more. The administration also previously told immigration judges they should dismiss "legally deficient" asylum cases without holding a hearing.

Some migrants who have lived and worked in the US for years have already received notices of their asylum applications being dismissed without a determination, according to a notice shared with CNN. It's unclear how many people have received the notice of dismissal.

The Trump administration has targeted multiple programs designed to temporarily protect migrants in the United States and in some cases, has terminated those protections. But it's unusual for USCIS to accept an application and then abruptly dismiss it.

"Our union opposes any policy that violates basic rights guaranteed to asylum seekers by US and International law. Under the Immigration and Nationality Act, an alien has the right to apply for asylum — and have due process in their pursuit of the same — whether or not they

arrived at a designated port of entry, irrespective of their immigration status," said Michael Knowles, executive vice president of the American Federation of Government Employees Council 119, which represents USCIS employees, in a statement to CNN.

The asylum process is also different because it provides a long-term solution for applicants and serves as a path to US citizenship, even for people who entered the country illegally.

"The government should process asylum applications – not throw them out. Every asylum seeker should have an opportunity to have their asylum case processed. These are immigrants who have been in the U.S. working legally for years and are contributing to local communities throughout the country," said Conchita Cruz, co-executive director of Asylum Seeker Advocacy Project. "Dismissing their asylum cases will hurt them, their families, employers, and communities that rely on them."

*This article has been updated with additional information.*

## Up next

Trump is creating new universes of people to deport
9 minute read


Why does the US want to deport this man?
6 minute read


Court orders Trump administration to return another wrongly deported man
2 minute read


Supreme Court allows Trump to remove migrants to South Sudan and other turmoil-filled countries
6 minute read


Trump administration sues all 15 Maryland federal judges over order blocking removal of immigrants
4 minute read
