# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

ASYLUM SEEKER ADVOCACY
PROJECT,

          Plaintiff,


     v.


U.S. CITIZENSHIP AND IMMIGRATION
SERVICES, *an agency within the U.S.
Department of Homeland Security*,


         Defendant.

**Case No. 1:25-cv-6065-CM**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR AN ORDER DIRECTING DEFENDANT TO SHOW CAUSE WHY A TEMPORARY RESTRAINING ORDER SHOULD NOT ISSUE GRANTING EXPEDITED PROCESSING OF <u>PLAINTIFFS' FOIA REQUESTS AND PROACTIVE DISCLOSURE OF RECORDS</u>**

## TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................................1

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND** ........................................3

    A.   Plaintiff the Asylum Seeker Advocacy Project ("ASAP")...........................................3

    B.   USCIS's Policies Regarding Asylum Dismissals and Expedited Removal ...................4

    C.   ASAP's FOIA Requests and USCIS's Failure to Respond.............................................6

**LEGAL STANDARD** ...........................................................................................................8

**ARGUMENT** ......................................................................................................................10

**I.**    **ASAP Is Likely to Succeed on the Merits**.................................................................10

    A.   ASAP's FOIA Requests Qualify for Expedited Processing on Three Independent
        Grounds .......................................................................................................................10

    B.   USCIS's Failure to Proactively Disclose Expedited Removal Policies and Staff
        Instructions Violates FOIA .........................................................................................17

**II.**   **ASAP, Its Members and the Public Will Suffer Irreparable Harm Absent the
       Requested Injunctive Relief**.......................................................................................18

**III.**  **The Balance of Equities and the Public Interest Favor Injunctive Relief**....................21

**CONCLUSION** ...................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Al-Fayed v. CIA*,
 254 F.3d 300, 310 (D.C. Cir. 2001) ............................................................................................14

*Am. C.L. Union v. U.S. Dep't of Just.*,
 321 F. Supp. 2d 24 (D.D.C. 2004) ................................................................................................9

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*,
 470 F. Supp. 3d 32 (D.D.C. 2020) ..............................................................................................21

*Am. Oversight v. U.S. Dep't of State*,
 414 F. Supp. 3d 182 (D.D.C. 2019) ............................................................................................20

*Bloomberg, L.P. v. U.S. Food & Drug Admin.*,
 500 F. Supp. 2d 371 (S.D.N.Y. 2007) ........................................................................................14

*Brennan Ctr. For Just. At NYU Sch. of L. v. Dep't of Com.*,
 498 F. Supp. 3d 87 (D.D.C. 2020) ................................................................................16, 18, 19

*Brennan Ctr. For Just. At NYU Sch. of L. v. U.S. Dep't of Just.*,
 No. 17-cv-6335, 2018 WL 637424 (S.D.N.Y. Jan. 31, 2018) ....................................................18

*Coronel v. Decker*,
 449 F. Supp. 3d 274 (S.D.N.Y. 2020) ........................................................................................19

*Ctr. for Pub. Integrity v. U.S. Dep't of Defense*,
 411 F. Supp. 3d 5 (D.D.C. 2019) ..........................................................................................9, 18, 19, 22

*Ferguson v. Tabah*,
 288 F.2d 665 (2d Cir. 1961) ........................................................................................................24

*Gund, Inc. v. SKM Enters., Inc.*,
 No. 01 CIV. 0882(CSH), 2001 WL 125366 (S.D.N.Y. Feb. 14, 2001) ......................................9

*Jacksonville Port Auth. v. Adams*,
 556 F.2d 52, 59 (D.C. Cir. 1977) ................................................................................................22

*JTH Tax, LLC v. Agnant*,
 62 F.4th 658 (2d Cir. 2023) ...........................................................................................................9

*L.M. v. Johnson*,
 150 F. Supp. 3d 202 (E.D.N.Y. 2015) ........................................................................................11

*N.L.R.B. v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ..................................................................................................2

*N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals*,
  987 F.3d 207 (2d Cir. 2021) ...............................................................2, 9, 18, 20

*N.Y. Times Co. v. Def. Health Agency*,
  No. 21-cv-566, 2021 WL 1614817 (D.D.C. Apr. 25, 2021) ...............................20

*Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*,
  236 F. Supp. 3d 810 (S.D.N.Y. 2017) ...............................................................16

*Nat'l Immigr. Project of the Nat. Laws. Guild v. U.S. Dep't of Homeland Sec.*,
  842 F. Supp. 2d 720 (S.D.N.Y. 2012) ...............................................................17

*New York ex rel. Schneiderman v. Actavis PLC*,
  787 F.3d 638 (2d Cir. 2015) .............................................................................18

*Nken v. Holder*,
  556 U.S. 418 (2009) ..........................................................................................21

Order Granting in Part Motion for Temporary Restraining Order, *E-C-R- v. Noem, et al.*,
  No. 25-cv-1230-SI (D. Or. July 16, 2025) ........................................................12

*Payne Enters., Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988)..........................................................................18

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,
  263 F. Supp. 3d 293 (D.D.C. 2017)..............................................................15, 16

*Protect Democracy Project, Inc. v. U.S. Dep't of Just.*,
  498 F. Supp. 3d 132 (D.D.C. 2020)..............................................................18, 23

*Salgado-Diaz v. Gonzales*,
  395 F.3d 1158 (9th Cir. 2005) ...........................................................................11

*Stevens v. U.S. Dep't of Health & Human Servs.*,
  666 F. Supp. 734 (N.D. Ill. 2023)......................................................................21

*Wash. Post v. U.S. Dep't of Homeland Sec.*,
  459 F. Supp. 2d 61, 76 (D.D.C. 2006)...............................................................22

**Statutes**

5 U.S.C. § 552(a)(2) ...................................................................................17, 18

5 U.S.C. §§ 552(a)(2)(B)–(C) ................................................................................................ *passim*

5 U.S.C. § 552(a)(4)(B) .......................................................................................................... 8, 9

5 U.S.C. § 552(a)(6)(E) ............................................................................................................... 7

5 U.S.C. § 552(a)(6)(E)(i)(I)–(II) ....................................................................................... 10, 21

5 U.S.C. § 552(a)(6)(E)(ii)(I) ..................................................................................................... 8

5 U.S.C. § 552(a)(6)(E)(iii) .......................................................................................................... 8

5 U.S.C. § 552(a)(6)(E)(v) .......................................................................................................... 15

5 U.S.C. § 552(a)(6)(E)(v)(I) .............................................................................................. 7, 10, 13

5 U.S.C. § 552(a)(6)(E)(v)(II) ............................................................................................. 7, 10, 14

5 U.S.C. § 706 ........................................................................................................................ 2, 11

8 U.S.C. § 1158(a)(1) .............................................................................................................. 2, 11

8 U.S.C. § 1225(b)(1)(A) .............................................................................................................. 4

8 U.S.C. § 1252(e)(3)(B) ................................................................................................. 2, 12, 14, 20

**Regulations**

6 C.F.R. § 5.5(e)(1) ................................................................................................................... 7

6 C.F.R. § 5.5(e)(1)(i) ........................................................................................................... 7, 13

6 C.F.R. § 5.5(e)(1)(iii) ......................................................................................................... 7, 10

6 C.F.R. § 5.5(e)(3) ............................................................................................................... 7, 15

6 C.F.R § 5.8(e) ......................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 65(c) .................................................................................................................. 23

## **INTRODUCTION**

Since January 20, 2025, the U.S. Department of Homeland Security ("DHS") and its component agency U.S. Citizenship and Immigration Services ("USCIS") have implemented significant changes to immigration enforcement policies.  USCIS has begun implementing a novel practice of dismissing long-pending affirmative asylum applications.  After asylum cases are dismissed, USCIS has, in some cases, placed individuals in expedited removal, a process through which DHS can summarily remove certain noncitizens with limited procedural protections.  Moreover, DHS has delegated authority to USCIS to implement expedited removal.  These changes have altered longstanding practices and reduced procedural protections, yet USCIS has not proactively disclosed these policies to the public as required by the Freedom of Information Act ("FOIA").  Instead, information about these policies has emerged only through litigation, accounts from impacted noncitizens or their attorneys, or limited media reports.  Accordingly, on June 18 and July 10, 2025, Plaintiff the Asylum Seeker Advocacy Project ("ASAP") filed three FOIA requests for the USCIS policies described above and records regarding their implementation.  ASAP requested, and demonstrated its entitlement to, expedited processing of each FOIA request and proactive disclosure of USCIS's policies and staff instructions.  USCIS to date has not acknowledged, nor substantively responded to, ASAP's FOIA Requests and is in violation of FOIA's plain terms.

USCIS's failure to comply with FOIA leaves hundreds of thousands of asylum seekers uncertain about their status and rights.  They do not know whether or why their long-pending asylum cases will be dismissed; whether they may, or soon will, be placed into expedited removal; whether they can reclaim their position in the yearslong queue for adjudicating their

asylum claims; whether USCIS will attempt to claw back their employment authorization that is tied to their pending asylum applications; or whether they will have a meaningful opportunity to challenge removal to countries where their safety or lives may be at risk.  This widespread uncertainty generates fear and prevents individuals from taking steps to protect their rights.

Moreover, while challenging USCIS's asylum dismissals is possible under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a)(1), the INA imposes a 60-day time limit for bringing systemic challenges to expedited removal policies, 8 U.S.C. § 1252(e)(3)(B).  Lack of public access to USCIS's expedited removal policies—particularly when juxtaposed with the 60-day deadline for systemic legal challenges to those policies—effectively creates "secret (agency) law," precisely what Congress sought to prevent through the FOIA's proactive disclosure provision.  *See N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals ("NYLAG")*, 987 F.3d 207, 223 (2d Cir. 2021) ("The [proactive disclosure] portion of the Act . . . represents a strong congressional aversion to secret (agency) law." (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (internal quotation marks omitted)).  Without timely disclosure or equitable tolling, the 60-day window may close before the public even knows what expedited removal policies are in force or how they are being applied.

Because USCIS's violations of the FOIA threaten imminent and irreparable harm on both individual and systemic bases, ASAP now seeks an order to show cause why a temporary restraining order ("TRO") should not issue, directing USCIS (1) to expeditiously process the FOIA Requests, (2) to promptly proactively disclose the records requested therein which are subject to 5 U.S.C. §§ 552(a)(2)(B)–(C), and (3) going forward, to proactively disclose all future

"statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; [and] administrative staff manuals and instructions to staff that affect a member of the public" reflecting USCIS's practices or processes for dismissing asylum claims and pursuing expedited removal against noncitizens. *Id.*

As demonstrated below, ASAP is likely to succeed on the merits of its claims that expedited processing and proactive disclosure are required; ASAP, its members and the public are likely to suffer irreparable harm absent emergency relief; and the public interest and balance of equities weigh decisively in ASAP's favor. ASAP therefore respectfully requests that its application for a TRO be granted.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff the Asylum Seeker Advocacy Project ("ASAP")

ASAP is a national membership organization that works alongside its members—asylum seekers from 175 countries—to build a more welcoming United States by, among other things, frequently communicating with members about changes in the immigration system. ASAP is a nonprofit organization headquartered in New York, New York. ASAP's members do not pay any fees or costs for their membership. Compl. ¶ 11.

ASAP regularly disseminates information and legal resources to its membership. ASAP supports members as they navigate the immigration system—through breaking news alerts and detailed resources on its website, https://asaptogether.org, as well as through member-wide updates via email and text messages, and informational YouTube videos, which are collectively accessed millions of times per year. *Id.* ¶ 12.

As part of its work creating and frequently updating public legal resources for its members to help them navigate the immigration system and understand the current state of federal immigration law and policy, ASAP has provided information regarding USCIS's purported practices of dismissing affirmative asylum cases and placing or noting that the asylum seeker is in expedited removal. *Id.* ¶ 13 & n.3.

### B.    USCIS's Policies Regarding Asylum Dismissals and Expedited Removal

Upon information and belief, USCIS has started a novel practice of dismissing certain pending affirmative asylum applications, and in some cases then routing noncitizens whose cases were dismissed into expedited removal. Compl. ¶ 17 & Ex. 1, Ex. 2 at 8–11, Ex. 5. Additionally, upon information and belief, on or around May 3, 2025, DHS Secretary Kristi Noem purported to delegate authority to USCIS to place noncitizens into expedited removal, a "fast-track deportation" that allows officials to summarily remove certain noncitizens from the United States without a full opportunity to present their asylum claims, *see id.* ¶ (quoting CNN article); 8 U.S.C. § 1225(b)(1)(A). News reports indicate that USCIS plans to use multiple distinct policies in tandem to maximize immigration arrests, Compl. ¶ 18 n.5, including USCIS's reported plans to dismiss asylum claims for potentially "hundreds of thousands of migrants" in the United States and then make those asylum seekers "immediately deportable." *Id.* Ex. 2 at 8. Here, USCIS appears to be implementing, in tandem, novel policies around dismissing asylum claims and expedited removal. *Id.* ¶ 18.

As of the date of this filing, USCIS's policies regarding terminating affirmative asylum applications, the DHS records purporting to delegate expedited removal authority to USCIS, and staff instructions directing the implementation of USCIS's purported authority to place people

into expedited removal are not public. *Id.* ¶ 19. There is intense public discussion and debate about the Administration's decision to terminate both affirmative (e.g., filed with USCIS) and defensive (e.g., filed in immigration court) asylum applications and then pursue the expedited removal of certain asylum seekers from the country, many of whom have lived and worked lawfully in the United States for years. *Id.* ¶ 20 (citing news reports).

USCIS's undisclosed policies of summarily terminating asylum applications, in tandem with placing people into expedited removal, has created widespread fear, confusion, and uncertainty. *Id.* ¶ 21. Directly impacted communities, and the legal assistance providers that serve them (including ASAP), are attempting to discern the current state of the already complicated immigration laws, as well as the lawfulness of the Administration's actions. Immigration attorneys and impacted individuals do not have the information needed to evaluate what is going on or how to best proceed in individual cases, and immigrants' rights litigators who are being approached about this issue do not have enough information to evaluate policies that could be unlawful. *Id.*

Further, ASAP has been unable to provide complete information about USCIS's policies of terminating affirmative asylum applications and placing people into expedited removal or informed guidance about the impacts to its members because the policy or policies and related staff instructions are not available publicly. *Id.* ¶ 23. Just as ASAP is unable to fully assess USCIS's policies for terminating certain asylum applications and placing people into expedited removal, nor can impacted individuals themselves or their families, lawyers, or communities without the requested records being public. *Id.* ¶ 24.

### C.      ASAP's FOIA Requests and USCIS's Failure to Respond

Recognizing the urgency to inform its members and the public about USCIS's new policies of dismissing certain asylum cases and telling applicants that they are in expedited removal, ASAP submitted three FOIA Requests to USCIS using the online portal provided by USCIS on June 18 and July 10, 2025.  *See* Compl. ¶ 29 & Exs. 1–3.

In the ER Delegation Memo FOIA Request, ASAP requested that USCIS produce "any and all memoranda or correspondence dated on or around May 3, 2025 from [DHS] Secretary Kristi Noem and/or any DHS official to any USCIS official(s) delegating authority to or authorizing USCIS officials to place noncitizens into Expedited Removal."  *Id.* ¶ 30 & Ex. 1 at 1.

In the ER Policies FOIA Request, ASAP requested that USCIS produce "any Agency memoranda, guidance, or other written policies reflecting USCIS's practices or processes for pursuing Expedited Removal for noncitizens dated from May 1, 2025 through the date this request is processed."  *Id.* ¶ 31 & Ex. 2 at 1.

In the Dismissals & ER Implementation FOIA Request, ASAP sought generally: (1) communications sent by a list of DHS and USCIS officials related to affirmative asylum terminations and expedited removal; (2) DHS memoranda or guidance purporting to delegate authority to USCIS to place noncitizens into expedited removal; (3) memoranda, policies, or lists reflecting USCIS's prioritization for terminating asylum applications and pursuing expedited removal; (4) USCIS memoranda or policies related to expedited removal; (5) USCIS memoranda or policies related to USCIS's understanding of its jurisdiction over (and ability to dismiss) affirmative asylum applications; and (6) training materials related to items 2–5.  *Id.* ¶ 32 & Ex. 3.

ASAP's FOIA Requests requested that USCIS expedite the processing of each request pursuant to 5 U.S.C. § 552(a)(6)(E) and DHS's applicable regulations, 6 C.F.R. § 5.5(e)(1).  The FOIA Requests asked that USCIS expedite processing of the requests for three independent reasons:  first, the FOIA Requests involve the "loss of substantial due process rights," 6 C.F.R. § 5.5(e)(1)(iii); second, the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual, 5 U.S.C. § 552(a)(6)(E)(v)(I), 6 C.F.R. § 5.5(e)(1)(i); and third, there is "an urgency to inform the public about an actual or alleged federal government activity" for ASAP, an organization "primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(v)(II), 6 C.F.R. § 5.5(e)(1)(ii).  The FOIA Requests each included "a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing," as required by 6 C.F.R. § 5.5(e)(3). Compl. ¶ 33 & Exs. 1–3.

The FOIA Requests also sought proactive disclosure of the records under 5 U.S.C. § 552(a)(2), as USCIS is obligated to affirmatively disclose all the records requested in the ER Delegation Memo FOIA Request and the ER Policies FOIA Request, and at least some of the records requested in the Dismissals & ER Implementation FOIA Request, under the FOIA's proactive disclosure provision.  *Id.* ¶ 34 & Exs. 1–3.  The FOIA Requests each sought a fee waiver, explaining that disclosure of the information is in the public interest and not in ASAP's commercial interest.  *Id.* ¶ 35 & Exs. 1–3.

USCIS was required to make a determination on the expedited processing requests for ASAP's FOIAs within 10 calendar days—or by June 28, 2025 (ER Delegation Memo FOIA) and July 20, 2025 (ER Policies FOIA and Dismissals & ER Implementation FOIA).  *See* 5 U.S.C.

§ 552(a)(6)(E)(ii)(I).  As of July 23, 2025, USCIS had not acknowledged receipt of the FOIA Requests, nor had it acknowledged or addressed ASAP's requests for expedited processing of the FOIA Requests.  Compl. ¶¶ 36–37 & Ex. 6.  USCIS has not produced or proactively disclosed any records nor made any substantive response to the FOIA Requests.  *Id.*

As a result, on July 23, 2025, ASAP filed its complaint for declaratory and injunctive relief.  In this application for an order to show cause why a TRO should not issue, ASAP respectfully requests that the Court preliminarily enjoin USCIS (1) to expeditiously process the FOIA Requests, (2) to promptly proactively disclose the records requested therein which are subject to 5 U.S.C. §§ 552(a)(2)(B)–(C), and (3) going forward, to proactively disclose all future "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; [and] administrative staff manuals and instructions to staff that affect a member of the public" reflecting USCIS's practices or processes for dismissing asylum claims and pursuing expedited removal against noncitizens.  *Id.*

## LEGAL STANDARD

The Court has jurisdiction and authority to grant all necessary injunctive relief where an agency denies a request for expedited processing of a FOIA request.  *Id.* § 552(a)(6)(E)(iii) ("Agency action to deny . . . a request for expedited processing . . . and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under paragraph (4)."); *see also id.* § 552(a)(4)(B) ("[T]he district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.").  Where, as here, the agency has constructively denied a request for expedited processing by failing to respond in a timely manner, the Court has the authority to issue a TRO

or a preliminary injunction. *See, e.g.*, *Ctr. for Pub. Integrity v. U.S. Dep't of Defense*, 411 F. Supp. 3d 5, 8, 11, 14–15 (D.D.C. 2019) (preliminary injunction ordering expedited processing and rolling record production).  A FOIA requestor may seek immediate judicial review of an agency's adverse determination of an expedited processing request.  6 C.F.R § 5.8(e); *see also Am. C.L. Union v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 28 (D.D.C. 2004) (no administrative exhaustion required prior to judicial review of agency's denial of expedited processing).

Furthermore, FOIA's remedial provision—5 U.S.C. § 552(a)(4)(B)—"authorizes courts to enforce FOIA's affirmative disclosure obligations by ordering that documents be made available to the public," including on a prospective basis to comply with the FOIA's proactive disclosure requirement.  *NYLAG*, 987 F.3d at 209; *see also id.* at 224–26 (holding that the FOIA's remedial provision gives the district court authority to order the Board of Immigration Appeals to proactively disclose its unpublished opinions, including prospectively).

"The standards for granting a temporary restraining order and a preliminary injunction are the same." *Gund, Inc. v. SKM Enters., Inc.*, No. 01 CIV. 0882(CSH), 2001 WL 125366, at *1 (S.D.N.Y. Feb. 14, 2001).  To be entitled to either form of relief, a plaintiff must demonstrate likelihood of success on the merits, likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the plaintiff's favor, and that an injunction is in the public interest. *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023).  As detailed below, ASAP makes the requisite showing as to each factor.

## ARGUMENT

II.     **ASAP Is Likely to Succeed on the Merits**

    **A. ASAP's FOIA Requests Qualify for Expedited Processing on Three Independent Grounds**

ASAP is likely to prevail on its cause of action that USCIS violated its statutory obligation to expedite the processing of ASAP's FOIA Requests, on three independent grounds.

A requestor seeking expedited FOIA processing must establish a "compelling need" for the records requested, or show it qualifies under another reason set out by the relevant agency. 5 U.S.C. §§ 552(a)(6)(E)(i)(I)–(II). A "compelling need" means that failure to expeditiously obtain the records "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" *or* there is an "urgency to inform the public concerning actual or alleged Federal Government activity" when the FOIA request is "made by a person primarily engaged in disseminating information[.]" *Id.* §§ 552(a)(6)(E)(v)(I)-(II). In addition, DHS regulations require USCIS to expedite processing if a FOIA request involves, in pertinent part, "[t]he loss of substantial due process rights[.]" 6 C.F.R. § 5.5(e)(1)(iii). Though ASAP satisfies all three of these grounds for expedition and made such a showing in its FOIA Requests, the Court need only find that ASAP is likely to succeed on one to rule in its favor.

    1.  <u>Failure to Expedite the FOIA Requests Involves the Loss of Substantial Due Process Rights</u>

First, ASAP is likely to succeed on the merits because the FOIA Requests implicate "[t]he loss of substantial due process rights." 6 C.F.R. § 5.5(e)(1)(iii). USCIS's failure to expeditiously process the FOIA Requests involves the "loss of substantial due process rights" both for individual noncitizens in their immigration cases and for litigants to mount systemic challenges. *Id.*

USCIS's failure to expeditiously process the FOIA Requests involves the "loss of substantial due process rights" for individual noncitizens.  6 C.F.R. § 5.5(e)(1)(iii).  Noncitizens "are entitled to due process and must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner."  *L.M. v. Johnson*, 150 F. Supp. 3d 202, 208 (E.D.N.Y. 2015) (internal quotation marks omitted).  USCIS's asylum dismissal and expedited removal policies directly implicate the due process rights of noncitizens, particularly asylum seekers.  Under these undisclosed policies, long-pending asylum applications are dismissed without warning.  This deprives applicants of the ability to maintain their place in the adjudication queue and threatens their lawful employment authorization, again without any opportunity to seek redress.  *See* Compl. ¶ 21 & n.6 (USCIS has a yearslong backlog for adjudicating asylum applications).  Once asylum cases are dismissed, individuals may be placed into expedited removal without proper legal authority or a meaningful opportunity to be heard or present their claims.  *Id.* ¶ 21; *but see Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1162 (9th Cir. 2005) ("Immigration proceedings . . . must conform to the Fifth Amendment's requirement of due process.").

In addition to impairing the due process rights of individual noncitizens, USCIS's failure to expeditiously process the FOIA Requests also involves the "loss of substantial due process rights" on a systemic basis.  6 C.F.R. § 5.5(e)(1)(iii).  While challenging USCIS's asylum dismissals is possible under the APA, 5 U.S.C. § 706, and the INA, 8 U.S.C. § 1158(a)(1), the lack of public information about USCIS's asylum dismissal policies makes it much harder to do so.  Indeed, as of the date of this filing, despite widespread reports of USCIS's dismissals, ASAP is aware of no case challenging the lawfulness of USCIS's dismissals practice on a systemic basis, and one case challenging the dismissal in an individual's case under the APA.  *See* Order

11

Granting in Part Motion for Temporary Restraining Order, *E-C-R- v. Noem, et al.*, No. 25-cv-1230-SI (D. Or. July 16, 2025), ECF No. 9 (in APA and INA lawsuit brought by affirmative asylum applicant after USCIS dismissed her affirmative asylum claim, court ordered that the asylum applicant shall "not be arrested nor placed in immigration detention or deported" pending briefing on her motion for a preliminary injunction).

Further, systemic challenges to expedited removal policies must "**be filed no later than 60 days** after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." 8 U.S.C. § 1252(e)(3)(B) (emphasis added). The federal government has vigorously defended this deadline in litigation challenging expedited removal policies. *See, e.g.*, Mem. in Support of Defs.' Mot. to Dismiss Pls.' Compl., *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-00872 (D.D.C. May 30, 2025), ECF No. 20, at 23–26 (arguing court lacks jurisdiction over plaintiffs' systemic challenge to expedited removal policy because 60-day deadline applies); Mem. in Support of Defs.' Mot. to Dismiss Pls.' Compl., *Make the Road N.Y. v. Noem*, 25-cv-00190 (D.D.C. Apr. 18, 2025), ECF No. 36, at 15–17 (same); Mem. in Support of Defs.' Partial Mot. to Dismiss, *M.M.V., et al. v. Barr, et al.*, No. 19-2773 (ABJ) (D.D.C. Feb. 14, 2020), ECF No. 72-1, at 21–28 (same); Mem. In Support of Defs.' Mot. to Dismiss, *Dugdale v. U.S. Customs and Border Prot.*, No. 14-cv-01175 (D.D.C. Sept. 29, 2014), ECF No. 24, at 21–22 (same). Given the 60-day statutory deadline, due process requires that USCIS expeditiously process the FOIA Requests and promptly produce USCIS's expedited removal policies and staff instructions; withholding them would deprive affected parties of any meaningful opportunity to seek timely judicial review.

2. <u>USCIS's Asylum Dismissal and Expedited Removal Policies Impact People's Lives and Physical Safety</u>

Second, and independently, ASAP is likely to succeed on the merits that its FOIA Requests are entitled to expedited processing because USCIS's implementation of asylum dismissal and expedited removal policies leaves asylum seekers imminently vulnerable to removal to countries where their physical safety or lives are in danger.  *See* 5 U.S.C. §§ 552(a)(6)(E)(v)(I); 6 C.F.R. § 5.5(e)(1)(i).  Asylum seekers who submit Form I-589 applications fled oppressive regimes, death threats, and persecution in their home countries. Compl. ¶ 27.  USCIS is now terminating certain affirmative asylum applications and exercising purported authority to place noncitizens into expedited removal.  *Id.* ¶¶ 17, 26, 27, Ex. 2 at 8–11, & Ex. 5.  However, asylum seekers have no understanding of how USCIS is implementing this purported authority; whether and why their affirmative asylum cases will be terminated; whether they will be placed into expedited removal; or whether they will have an adequate opportunity to challenge their removal to countries where their physical safety or lives are in danger.  *Id.* ¶¶ 21, 27.

3. <u>It Is Urgent that ASAP, An Organization Primarily Engaged in Disseminating Information, Inform the Public About USCIS's Policies Around Asylum Dismissals and Expedited Removal</u>

Finally, a "compelling need" for expedition independently exists here because there is an "urgency [for ASAP] to inform the public concerning actual or alleged Federal Government activity," as an organization "primarily engaged in disseminating information."  5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1)(ii).

***Urgency to inform the public of federal government activity.***  USCIS's dismissals of affirmative asylum applications and implementation of its purported authority to place people,

including asylum seekers, into expedited removal constitutes an "actual or alleged Federal

Government activity," and it is urgent that the public be informed about how this authority will

be implemented.  *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1)(ii).  An "urgency to

inform the public" about federal government activity exists where the FOIA request "concerns a

matter of current exigency to the American public" and "the consequences of delaying a

response would compromise a significant recognized interest[.]" *Bloomberg, L.P. v. U.S. Food

& Drug Admin.*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007) (quoting *Al-Fayed v. C.I.A.*, 254 F.3d

300, 310 (D.C. Cir. 2001)).

On information and belief, USCIS has already dismissed or imminently will dismiss

numerous individual asylum applications for the purpose of pursuing expedited removal of those

asylum seekers, making its interwoven dismissal and expedited removal policies "of current

exigency to the American public."  *Bloomberg, L.P.*, 500 F. Supp. 2d at 377; *see also* Compl.

¶ 17 & Exs. 2, 3, 5.  Moreover, "the consequences of delaying a response would compromise a

significant recognized interest," *Bloomberg, L.P.*, 500 F. Supp. 2d at 377, for many of the same

reasons the FOIA Requests involve a loss of substantial due process rights discussed above.

Specifically, USCIS's policies of dismissing long-pending asylum applications has caused

widespread fear and confusion, and individuals who have received such dismissals face

immediate consequences including the loss of their place in the asylum adjudication queue,

threat to their employment authorization tied to their asylum application, and fear of or actual

exposure to imminent removal to countries where they face persecution.  Compl. ¶¶ 26–27.  In

addition, litigants have only 60 days to evaluate and challenge expedited removal policies on a

systemic basis, *see* 8 U.S.C. § 1252(e)(3)(B).  Without timely access to the requested records, the

60-day deadline may lapse, depriving litigants of any opportunity to seek judicial review.
Compl. ¶ 28.

The existence of numerous public articles "can be helpful to establishing" the "urgency to inform" requirement, 6 C.F.R. § 5.5(e)(3), and ASAP cited several such articles in its FOIA Requests.  *See*, *e.g.*, Compl. ¶ 14 (citing CNN article on this topic); *id.* ¶ 20 (citing articles from ABC News, The Hill, and the Los Angeles Times on this topic); *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) ("widespread media attention— including by some of the nation's most prominent news outlets" is "strong evidence of an 'urgency to inform' the public").  For these reasons, it is urgent that records related to USCIS's policies around dismissing affirmative asylum applications and implementation of its purported expedited removal authority be made public.

***ASAP is primarily engaged in disseminating information.***  In addition, ASAP is an organization "primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(v); 6 C.F.R. § 5.5(e)(1)(ii), because "information dissemination [is its] main activity," *Protect Democracy Project*, 263 F. Supp. 3d at 298 (internal quotation marks and citation omitted). ASAP frequently communicates about changes in the immigration system with its members from more than 175 countries.  Compl. ¶ 11.  ASAP has the capacity and intent to disseminate widely the requested information to its members through breaking news alerts and detailed resources on its website, https://asaptogether.org, as well as through member-wide updates via email and text messages, and informational YouTube videos, which are collectively accessed millions of times per year.  *Id.* ¶ 12.  As part of its work, ASAP has already disseminated information to its members and the public regarding USCIS's purported practice of dismissing asylum cases and

placing or noting that the asylum seeker is in expedited removal. *Id.* ¶ 13 & n.3. Further, ASAP will disseminate the requested records to the public through interested national print and news media outlets, with which ASAP frequently works. *Id.* ¶ 14. Indeed, ASAP's work has repeatedly been featured in prominent media outlets including The Washington Post, The New York Times, The Wall Street Journal, USA Today, CBS News, The Atlantic, Telemundo, Univision, The Hill, Associated Press, ABC News, and The Guardian, among others. *Id.*

Courts have routinely held that these representations by organizations like ASAP establish that a FOIA requestor is "primarily engaged in disseminating information." *See Protect Democracy Project, Inc.*, 263 F. Supp. 3d at 298 (organization "primarily engaged in disseminating information" where it intended "to disseminate the information obtained" and its "core mission . . . [was] to inform public understanding on operations and activities of government"); *see also Brennan Ctr. For Just. At NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 98 (D.D.C. 2020) (organizations such as the Brennan Center, a "law and public policy group that regularly writes, publishes, and disseminates information [online]" satisfy the standard (alterations omitted)); *cf. Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp. 3d 810, 817 (S.D.N.Y. 2017) (plaintiffs who alleged they "maintain websites that receive many visits" and "will widely publish and disseminate [the] information to the press and to the public," without more, did not show they are primarily engaged in disseminating information).

In sum, under any of the three "compelling circumstances" grounds established by the FOIA and DHS regulations, ASAP has established it is likely to succeed on the merits of its claim that it is entitled to expedited processing of its FOIA Requests.

**B.  USCIS's Failure to Proactively Disclose Policies and Staff Instructions
Related to Asylum Dismissals and Expedited Removal Violates FOIA**

Further, ASAP is likely to succeed on the merits of its cause of action that USCIS's

failure to proactively disclose "those statements of policy and interpretations which have been

adopted by the agency and are not published in the Federal Register; [and] administrative staff

manuals and instructions to staff that affect a member of the public[,]" related to asylum

dismissals and expedited removal violates FOIA's proactive disclosures provision.  5 U.S.C.

§§ 552(a)(2)(B)–(C) (referred to collectively herein as "policies and staff instructions").

The plain text of the FOIA statute requires that USCIS proactively disclose, as relevant

here, any policies and staff instructions related to its asylum dismissals and expedited removal

policies.  *Id.*.  ASAP's ER Delegation Memo FOIA Request and ER Policies FOIA Request

exclusively seek records that fall under section 552(a)(2)(B), as they encompass only statements

of policy and interpretations which are not published in the Federal Register.  Compl. ¶¶ 30–31

& Exs. 1–2.  And ASAP's Dismissals & ER Implementation FOIA Request seeks records that, at

least in part, fall under both sections 552(a)(2)(B) and (C).  *Id.* ¶ 32 & Ex. 3 (covering both

policies and staff instructions implementing the policies).  Because USCIS has failed to

proactively disclose the records sought in the FOIA Requests, which are subject to the FOIA

proactive disclosure provision, ASAP is likely to succeed on the merits that USCIS is in

violation of 5 U.S.C. § 552(a)(2) by failing to proactively disclose them.  *See Nat'l Immigr.

Project of the Nat. Laws. Guild v. U.S. Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 729

(S.D.N.Y. 2012) (explaining that an agency "ha[s] a duty under FOIA to make statements of

[agency] policy publicly available" and FOIA prohibits "agencies from intending to keep

statements of their policy confidential" (citing 5 U.S.C. § 552(a)(2)(B)); *see also NYLAG*, 987

17

F.3d at 215 (holding that FOIA authorizes district courts to order injunctive relief to enforce

section 552(a)(2), including an order requiring the agency to make available to the public records

subject to FOIA's proactive disclosure requirement).

### III.    ASAP, Its Members and the Public Will Suffer Irreparable Harm Absent the Requested Injunctive Relief

Irreparable harm is "injury that is neither remote nor speculative, but actual and imminent

and that cannot be remedied by an award of monetary damages." *Brennan Ctr. of Just. at NYU*

*Sch. of L. v. U.S. Dep't of Just.*, No. 17-cv-6335, 2018 WL 637424, at *2 (S.D.N.Y. Jan. 31,

2018) (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir.

2015)).  This inquiry for FOIA "focuse[s] on the public's 'access' to the records as the basis for

irreparable harm," and "consider[s] 'public awareness' and the public's 'ability to make its views

known in a timely fashion.'" *Brennan Ctr.*, 498 F. Supp. 3d at 102–03 (internal quotation marks

omitted); *see also Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132,

142 (D.D.C. 2020) (concluding plaintiff showed irreparable harm because the public needs

timely information on ongoing investigations affecting voting rights).  Further, in the FOIA

context, courts have long recognized that "stale information is of little value." *Payne Enters.,*

*Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).  Accordingly, in cases involving

"ongoing proceedings of national importance," "a delay in the release of the requested

information" amounts to "irreparable harm." *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 12–13

(collecting cases).

The lack of information about USCIS's policies for dismissing asylum applications and

placing people into expedited removal is causing and will continue to cause irreparable harm to

ASAP, its members, and the public.  *See generally* Compl. ¶¶ 21-28.

First, not only does the public lack access to USCIS's current and ongoing dismissal and expedited removal policies, which itself is a basis for irreparable harm under FOIA, *Brennan Ctr.*, 498 F. Supp. 3d at 102–03; *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 12–13, but the lack of transparency has also caused widespread fear, confusion, and uncertainty that is detrimental to the public, Compl. ¶ 21.

Second, without access to USCIS's dismissal and expedited removal policies, noncitizens impacted by these non-public policies are unable to understand or adequately challenge USCIS's dismissal of their asylum applications or their placement in expedited removal. *Id.* ¶ 26 & Ex. 5. On information and belief, under these undisclosed policies, long-pending applications are dismissed without warning, and individuals may be placed into expedited removal without proper legal authority or any meaningful opportunity to be heard or present their claims. *Id.* ¶ 26. Asylum applicants, who have fled oppressive regimes, death threats, and persecution in their home countries, are now afraid they could be imminently removed to countries where their physical safety or lives are in danger, without any meaningful process or opportunity to challenge the dismissal of their asylum applications. *Id.* ¶ 27. Deprivation of due process and the statutory right to apply for asylum, imminent removal from the country, and risk to life and safety are irreparable harms that cannot be remedied by an award of monetary damages. *See, e.g.*, *Coronel v. Decker*, 449 F. Supp. 3d 274, 281 (S.D.N.Y. 2020) (explaining that an alleged violation of a constitutional right and "imminent risk to . . . safety[] and lives" constitutes irreparable harm).

Further, USCIS's nondisclosure deprives applicants of the ability to maintain their place in the yearslong asylum adjudication queue and threatens their lawful employment authorization,

again without any understanding of the policies being applied to them or opportunity to seek redress. The repercussions of these harms extend widely to local communities and employers as well. Compl. ¶ 26. The consequences of USCIS's undisclosed policies are severe and irreparable—impacted noncitizens, particularly asylum seekers, require immediate access to these policies in order to assess, and potentially challenge, USCIS's application of these policies to their asylum cases.

Third, because there is a 60-day statutory deadline to challenge the lawfulness of expedited removal policies, USCIS's improper withholding of its expedited removal policies from the public deprives affected parties of a meaningful opportunity to bring systemic challenges to the policies. *See* 8 U.S.C. § 1252(e)(3)(B); Compl. ¶ 28. Courts have recognized that delay in producing a document amounts to irreparable harm where the requested document is "time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the [document] would be lessened or lost." *N.Y. Times Co. v. Def. Health Agency*, No. 21-cv-566, 2021 WL 1614817, at *8 (D.D.C. Apr. 25, 2021) (internal citation and quotation marks omitted). That is precisely the case here, where absent relief requiring USCIS to expeditiously process the FOIA Requests and proactively disclose its expedited removal policies and staff instructions going forward, the 60-day deadline will run and could preclude any judicial review of expedited removal policies. *See also Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019) (Where "time is necessarily of the essence, the harm in agency delay is more likely to be irreparable." (internal citation and quotation marks omitted)); *NYLAG*, 987 F.3d at 223 (prospective relief requiring proactive

disclosure going forward was appropriate where agency's failure to do so "systematically limits the access to information of parties opposing the government in immigration proceedings").

Fourth, ASAP cannot fulfill its mission of informing its members about these policies while USCIS withholds the records.  Compl. ¶¶ 11–13, 23, 29.  A plaintiff's need to "timely inform the public" of the agency's alleged actions "is sufficient to demonstrate that a failure to receive the documents on an expedited basis will cause [the plaintiff] irreparable harm."  *Stevens v. U.S. Dep't of Health & Human Servs.*, 666 F. Supp. 734, 746 (N.D. Ill. 2023); *see also Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020) (delay in release of information about COVID-19 response to people in custody during the pandemic "would cause irreparable harm.").  For all of these reasons, ASAP, ASAP's members, and the public will suffer irreparable harm absent emergency relief.

## IV.    The Balance of Equities and the Public Interest Favor Injunctive Relief

Where, as here, the Government is the defendant, the balance of equities and public interest factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The balance of equities and the public interest weigh decisively in ASAP's favor because no other interests would be harmed by granting the requested relief, and there is a compelling public interest in the immediate release and proactive disclosure of USCIS's policies and staff instructions around expedited removal and asylum dismissals.

As discussed above, the FOIA requires that requests be processed expeditiously, and documents be proactively disclosed, in these exact circumstances.  *See* 5 U.S.C. §§ 552(a)(6)(E)(i)(I)–(II) (providing for expedited processing when the requestor "demonstrates a compelling need" or "in other cases determined by the agency"); *id.* § 552(a)(2) (requiring

proactive disclosure of policy statements, guidance and staff instructions that affect members of the public); *supra* Argument Part I (ASAP likely to succeed on the merits that it has demonstrated a compelling need on three independent grounds and that USCIS's failure to proactively disclose policies and staff instructions subject to the FOIA Requests violates FOIA). Accordingly, neither USCIS nor other FOIA requestors can be harmed by USCIS being ordered to comply with its own statutory and regulatory obligations. *See Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977) (recognizing "an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate"); *Wash. Post v. U.S. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 76 (D.D.C. 2006) ("If anything, the public's interest in this case is best assessed through the statutory provisions passed by the public's elected representatives."); *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 14 ("the hardship on other FOIA requesters is not a bar to relief").

Further, any burden to USCIS would be minimal at most because ASAP's FOIA Requests require processing of a discrete, narrowly defined set of documents. Specifically, the ER Delegation Memo FOIA Request seeks "any and all memoranda or correspondence dated on or around May 3, 2025 from [DHS] Secretary Kristi Noem and/or any DHS official to any USCIS official(s) delegating authority to or authorizing USCIS officials to place noncitizens into Expedited Removal"—what ASAP anticipates may be a single document. *See* Compl. ¶ 30 & Ex. 1. The ER Policies FOIA Request seeks USCIS's memoranda, guidance, or other written policies around expedited removal from May 1, 2025 forward—a request limited by a narrow date range, a single agency and a single topic. *Id.* ¶ 31 & Ex. 2. Finally, in the Dismissals & ER Implementation FOIA Request, ASAP seeks six categories of communications, memoranda,

policies, and other documents around USCIS's implementation of asylum dismissals and expedited removal, as well as training materials for implementing the same. *Id.* ¶ 32 & Ex. 3. This FOIA Request is limited temporally to either January 20, 2025 forward or January 20, 2021 forward, depending on the category of records described. *Id.* Ex. 3. The Dismissals & ER Implementation FOIA Request reflects ASAP's (and the public's) lack of information about USCIS's policies at issue, yet still describes a discrete set of documents covering defined time periods and a narrow subject matter that USCIS would not "face a particularly heavy burden" to process. *See Protect Democracy Project, Inc.*, 498 F. Supp. 3d at 144 (explaining that agency would not "face a particularly heavy burden," where FOIA request was "relatively limited in that it only seeks 'communications' regarding a narrowed subject matter and time period"). Further, in accordance with established FOIA practice, ASAP stands ready to engage in good-faith discussions to refine or narrow the scope of the requested records to minimize any burden on the agency once USCIS begins processing the FOIA Requests.

In sum, the balance of equities and public interest weigh decisively in favor of ordering USCIS to expeditiously process ASAP's FOIA Requests and proactively disclose the policy documents and staff instructions requested in the FOIA Requests as well as going forward.

For these same reasons, USCIS will not be harmed, nor will ASAP be unjustly enriched, by a TRO. ASAP is a nonprofit organization seeking the records and proactive disclosure to inform its members and the public, not for commercial gain. *See* Compl. ¶ 35 & Exs. 1–3. ASAP therefore respectfully requests that, should the Court decide to enter a TRO, that it exercise its discretion to waive bond under Federal Rule of Civil Procedure 65(c). *See Ferguson*

*v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961) ("[T]he matter of a bond is for the discretion of the trial court").

## CONCLUSION

For the foregoing reasons, Plaintiff Asylum Seeker Advocacy Project respectfully requests that the Court issue an order to show cause why a temporary restraining order should not issue directing Defendant U.S. Citizenship and Immigration Services to (1) expeditiously process the FOIA Requests, (2) promptly proactively disclose the records requested therein which are subject to 5 U.S.C. §§ 552(a)(2)(B)–(C), and (3) going forward, to proactively disclose all future "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; [and] administrative staff manuals and instructions to staff that affect a member of the public" reflecting USCIS's practices or processes for dismissing asylum claims and pursuing expedited removal against noncitizens, 5 U.S.C. §§ 552(a)(2)(B)–(C).

Dated: July 25, 2025

Jessica Hanson*
Marcela Johnson*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 647-6779
jessica.hanson@asylumadvocacy.org
marcela.johnson@asylumadvocacy.org

*\* Motion for admission* pro hac vice *pending*

Respectfully submitted,

 */s/ Elora Mukherjee*
Elora Mukherjee
MORNINGSIDE HEIGHTS LEGAL SERVICES, INC.
435 West 116th St.
New York, NY 10027
EMukherjee@law.columbia.edu
(212) 854-4291

*Attorneys for Plaintiff Asylum Seeker Advocacy Project*

24

## **WORD COUNT CERTIFICATION**

I hereby certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Memorandum of Law contains 6,838 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: July 25, 2025                                    Respectfully submitted,

                                                         _/s/ Elora Mukherjee_
                                                        Elora Mukherjee

                                                        *Attorney for Plaintiff Asylum Seeker Advocacy Project*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that at the time of filing on July 25, 2025, counsel for Defendant had not yet entered an appearance in the above-captioned case.  Therefore, notice of ASAP's Motion for a Temporary Restraining Order, and Order to Show Cause, were sent to the Chief of the Civil Division for the U.S. Attorney's Office for the Southern District of New York, Jeffrey Oestericher, via electronic mail on July 25, 2025.

 */s/ Elora Mukherjee*
Elora Mukherjee


*Attorney for Plaintiff Asylum Seeker Advocacy Project*